UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>RONALD A. BUEHLER,<br><br>　　Debtor<br>_____<br><br>SHERYL L. SCHNITTJER,<br>CHAPTER 7 TRUSTEE,<br><br>　　Plaintiff<br>vs.<br><br>ROGER BUEHLER,<br><br>　　Defendant | Chapter 7<br><br>Bankruptcy No. 20-00857<br><br><br><br><br><br><br><br>Adversary No. 20-09049 |

**RULING ON RECOVERING PREFERENCES AND OTHER RELIEF**

　　This matter came before the Court by evidentiary hearing in Dubuque on September 29, 2021. Dustin A. Baker appeared for Defendant, Roger Buehler ("Defendant"). Jackson C. Blais appeared for Plaintiff, Sheryl L. Schnittjer the Chapter 7 Trustee ("Plaintiff"). The Court received evidence, heard arguments, and allowed post-trial briefing. All papers have been submitted and the case is ready for decision. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## STATEMENT OF THE CASE

Debtor Ronald A. Buehler ("Debtor") filed the underlying Chapter 7 petition on June 6, 2020. (Bankr. No. 20-00857). On October 8, 2020, Plaintiff filed this Adversary Proceeding to avoid and recover a pre-petition transfer as a preferential transfer under 11 U.S.C. §§ 547(b), 550(a). (ECF Doc. 1). On December 4, 2020, Plaintiff filed a Motion for Summary Judgment. (ECF Doc. 10). On December 28, 2021, Defendant objected to the Motion for Summary Judgment. (ECF Doc. 15). On January 27, 2021, the Court ruled on the motion for summary judgment and ordered trial on the sole issue of Defendant's defense under 11 U.S.C. § 547(c)(2). (ECF Doc. 16). On September 29, the Court held an evidentiary hearing on the motion to recover preferences and other relief. At the hearing the Plaintiff argued that the 2019 Payment was not made in the ordinary course of business. Based on the testimony and the evidence presented at trial, the Court rules in favor of Defendant.

## FINDINGS OF FACT

Defendant is Debtor's father. Defendant and Debtor executed a Lease Agreement dated August 30, 2013, for the rent of a parcel of land of approximately 583 acres ("Original Lease Agreement"). (Ex. 1). The language of the Original Lease Agreement established two payments of $55,000 due on

March 1st and December 1st of each year. (Id.). The agreement also provided for $1,650 interest annually. (Id.).

Defendant testified that the parties' business practice, however, differed from these terms. Debtor made one payment a year of $110,000 on or about December 1st. No interest was ever collected in any of these transactions. The Original Lease Agreement expired on September 1, 2016. (Id.). On August 30, 2016, the parties executed a new agreement for the rent of the same parcel of land ("Lease Agreement"). (Ex. 6). The Lease Agreement reflected the parties' business practices: one payment of $110,000 due on December 1st of each year with no interest payment. (Id.). Defendant received full payment every year from 2014 until 2019. (Exs. 2–5 & 7–15). The following payments from the Debtor were received before the bankruptcy was filed:

| Year | Payment Date | Number of Days Late | Amount Received | Payment Method |
|---|---|---|---|---|
| 2014 | November 14, 2014 | 0 | $110,000.00 | Automatic Deposit |
| 2015 | December 22, 2015 | 21 | $110,000.00 | Automatic Deposit |
| 2016 | January 26, 2017 | 56 | $110,000.00 | Automatic Deposit |

3

| 2017 | December 29, 2017 | 28 | $92,894.16 | Automatic Deposit |
| 2018 | December 26, 2018 | 25 | $110,000.00 | Automatic Deposit |
| 2019 | January 6, 2020 | 36 | $110,000.00 | Check |

(Exs. 2–5 & 7–15).

Except for the 2014 payment, the Debtor paid late. (Id.). The earliest payment was in 2014, where the Debtor paid 17 days early, and the latest payment was in 2016, where the Debtor paid 55 days late. (Id.). In his testimony Defendant stated that the payment inconsistencies were because the payment depended on the weather conditions. Defendant never questioned the tardiness of the payments and always accepted the late payments. In addition, Defendant explained that he usually got the payments deposited in his bank account, and that for the 2019 Payment, he requested Debtor to send him a check. Therefore, Debtor's business dealings with Defendant consisted of periodical unpunctual payments (Defendant received a payment every year) deposited in Defendant's bank account.

Defendant stated multiple times that he did not know about the source of the payments, and that he never inquired about it.

4

On October 8, 2020, Plaintiff, filed this adversary proceeding to avoid and recover the 2019 above-mentioned payment ("2019 Payment") as a preferential transfer under 11 U.S.C. §§ 547(b), 550(a). Defendant argues that the 2019 Payment occurred in the ordinary course of Debtor's business.

## DISCUSSION

**I. Preferential Transfers under § 547(b)**

Under § 547(b) of the Bankruptcy Code, a bankruptcy trustee may avoid a preferential transfer if the transfer satisfies all the requirements of § 547(b). Section 547 provides, in relevant part:

> (b) Except as provided in subsections (c), (i), and (j) of this section, **the trustee may . . . avoid any transfer of an interest of the debtor in property**—
>   (1) to or **for the benefit of a creditor**;
>   (2) for or **on account of an antecedent debt** owed by the debtor before such transfer was made;
>   (3) made **while the debtor was insolvent**;
>   (4) **made**—
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and **one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider**; and
>   (5) that **enables such creditor to receive more than such creditor would receive if**—
>     (A) **the case were a case under chapter 7** of this title;
>     (B) **the transfer had not been made**; and
>     (C) **such creditor received payment** of such debt to the extent provided by the provisions of this title.

5

11 U.S.C. § 547(b) (emphasis added). The burden of proof in a preference action is governed by § 547(g). That section provides: "For the purposes of this section, **the trustee has the burden of proving the avoidability of a transfer under subsection (b)** of this section . . . ." 11 U.S.C. § 547(g) (emphasis added). Thus, the bankruptcy trustee bears the initial burden of proving that the undisputed facts establish each element of a preferential transfer under § 547(b).

While the elements of a preferential transfer have been conceded, Defendant asserts the "ordinary course of business" defense under § 547(c)(2). Accordingly, the Court will address Defendant's affirmative defense.

## II. Ordinary Course of Business Defense under § 547(c)(2)

Defendant provided proof of all payments received from Debtor during the course of their business relationship. The evidence shows that Defendant received payments each year from 2014 to 2019. Plaintiff does not dispute these payments but argues that the 2019 payment was made neither in the ordinary course of business, nor according to ordinary business terms according to § 547(c)(2). The Court disagrees.

The ordinary course of business defense found in Bankruptcy Code § 547(c)(2) provides a "safe harbor" to an alleged preference payment by preventing the trustee from avoiding it if the payment satisfies the section's

requirements. "Section 547(c)(2) provides two separate affirmative defenses." Rice v. M-Real Estate LLC (In re Turner Grain Merch., Inc.), 595 B.R. 295, 306 (Bankr. E.D. Ark. 2018). Each defense is subject to the threshold requirement that the "transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee." 11 U.S.C. § 547(c)(2). Once this threshold is met, the creditor must either prove that the transfer was "(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms." Id. The ordinary course of business defense is an affirmative defense, and Defendant has the burden of proving by a preponderance of the evidence that the transfer meets a condition making it nonavoidable. 11 U.S.C. § 547(g); see Cox v. Am. Pan Co. (In re Meyer's Bakeries, Inc.), 387 B.R. 762, 764 (Bankr. W.D. Ark. 2008).

The Court will first determine whether Defendant has satisfied the initial threshold requirement of § 547(c)(2). Based on the record before the Court, this threshold has been satisfied. The 2019 Payment was made in payment of a debt incurred by the Debtor in the ordinary course of business with Defendant. Defendant testified the parties had a business relationship from 2013 until 2019. Defendant testified and produced supporting evidence showing that Debtor paid

him for the farmland rental. The 2019 Payment was made as a payment for the use of farmland during the 2019 year.

The next issue is whether Defendant can meet his burden that the 2019 Payment occurred in the ordinary course of business under § 547(c)(2)(A). A controlling factor in making this determination is whether the transactions both before and during the ninety-day period were consistent. Rice, 595 B.R. at 307 (quoting Official Plan Comm. v. Expeditors Int'l of Wash., Inc. (In re Gateway Pac. Corp.), 153 F.3d 915, 917 (8th Cir. 1998)). Stated another way, the cornerstone of the ordinary course of business analysis is whether the creditor can demonstrate that a particular transfer is consistent with the debtor and creditor's previous business practices. Harder v. JPPCS, Inc. (In re Graff), 454 B.R. 745, 751 (Bankr. W.D. Mo. 2011). "Even if the debtor's business transactions were irregular, they may be considered 'ordinary' for purposes of § 547(c)(2) if those transactions were consistent with the course of dealings between the particular parties." Id. (citation omitted).

The Bankruptcy Code does not provide a specific statutory test to determine if a transaction satisfies the ordinary course of business exception. In re Agriprocessors, Inc., 859 F.3d 599, 607 (8th Cir. 2017). Courts have evaluated the factual peculiarities of each case to determine if the exception applies.

Harrah's Tunica Corp. v. Meeks (In re Armstrong), 291 F.3d 517, 527 (8th Cir. 2002). Courts have identified four factors to assist in the determination:

> (1) the length of time the parties were engaged in the transactions at issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or the creditor engaged in any unusual collection or payment activity; and (4) whether the creditor took advantage of the debtor's deteriorating financial condition.

Harder, 454 B.R. at 751; (citing Laclede Steel Co. v. Concast Can., Inc. (In re Laclede Steel Co.), 271 B.R. 127, 131 (8th Cir. B.A.P. 2001). Courts may give different weight to each factor, and no factor alone is determinative. See Laclede, 271 B.R. at 131.

Debtor and Defendant conducted business from the year 2013, when they executed the Original Lease Agreement, to the 2019 Payment. This shows a business relationship of six years. The Debtor and Defendant thus conducted business together for enough time to develop common business practices.

There is no dispute that the amount of payment made in the 2019 Payment was consistent parties' business practice. Debtor had been paying $110,000 for the rent of farmland since the parties commenced their business relationship.

At the center of the dispute is whether the 2019 Payment made during the preference period is consistent with the transfers made during the pre-preference period. In making this determination, the Court pays particular attention to the

9

timing of the payments. "Courts have found that small deviations in payment timing may not be so significant as to defeat the ordinariness of such payments. In contrast, courts have held greater deviations in payment timing sufficiently significant to defeat the ordinariness of such payments." Forman v. Moran Towing Corp. (In re AES Thames, LLC), 547 B.R. 99, 104 (Bankr. D. Del. 2016) (internal punctuation omitted) (quoting Radnor Holdings Corp. v. PPT Consulting, LLC (In re Radnor Holdings Corp.), Ch. 11 Case No. 06-10894, Adv. No. 08-51184, 2009 Bankr. LEXIS 1815, at *5 (Bankr. D. Del. Jul. 9, 2009)).

The Eight Circuit has used the median time of the payments to compare payments made during the pre-preferential period and the payments made during the preferential period. See Official Plan Comm., 153 F.3d at 918. Here, the median of days late during the pre-preferential period (years 2014, 2015, 2016, 2017 and 2018) is 25. The 2019 Payment was made 36 days late. This is an increase of only 11 days. The Court does not consider that a payment made 11 days after the median falls outside the ordinary course of business. Defendant has consistently accepted late payments from the Debtor. There was only one occasion in which the payment was made before the due date. The rest of the payments were made late. The latest payment that the Defendant received was in the year 2016, 55 days late. This Court concludes that a payment made 11 days

later than the median of late payment and is in fact within the ordinary course of business established by the parties does not show an unusual business practice.

Moreover, there is no evidence that Defendant engaged in unusual collection efforts or put undue pressure on the Debtor to precipitate the transfer. Nothing shows that Defendant took advantage of the Debtor's financial vulnerability. Defendant was not aware of Debtor's financial condition or impending bankruptcy. Defendant has met his burden in showing that the 2019 Payment falls within the ordinary course of business.

This Court is cognizant of the importance of a debtor's need to maintain a constructive relationship with certain creditors. When a debtor-creditor relationship has been cemented through the years, long before the debtor filed for bankruptcy, the Court should pause and make a prudent consideration before further impairing a creditor that has been able to maintain a business relationship. Accordingly, this Court concludes that Defendant has met his burden of establishing that the ordinary course of business defense applies to the 2019 Payment. Since Defendant has met his burden of proving that the 2019 Payment satisfies the requirements under § 547(c)(2)(A), the Court need not reach the second defense under § 547(c)(2)(B)—whether the debts were paid in the ordinary course of business between the parties or on ordinary business terms.

## CONCLUSION AND ORDER

Defendant has established that the payment at issue satisfied the ordinary course of business exception. Trustee thus cannot recover the 2019 payment as a preferential transfer.

Ordered:

March 21, 2022

Thad J. Collins
Chief Bankruptcy Judge